# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-1065

_____

Philip Sieden

*Plaintiff - Appellant*

v.

Chipotle Mexican Grill, Inc.,

*Defendant - Appellee*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: November 16, 2016
Filed: January 26, 2017

_____

Before BENTON and SHEPHERD, Circuit Judges, and STRAND,[1] District Judge.

_____

STRAND, District Judge.

_____

[1]The Honorable Leonard T. Strand, United States District Judge for the Northern District of Iowa, sitting by designation.

Philip Sieden appeals the district court's[2] grant of summary judgment in favor of Chipotle Mexican Grill, Inc. (Chipotle), on his reprisal claim under the Minnesota Human Rights Act (MHRA). The district court found that Sieden failed as a matter of law to establish that his employer's proffered reason for discharge was pretextual. We affirm.

I.    BACKGROUND

Chipotle operates a national chain of restaurants with multiple locations in Minnesota. Each restaurant is managed by a general manger who reports to an area manager. Above the area managers are team directors. During the relevant time period, Todd Patet was the area manager in Sieden's area and Travis Moe was the team director of the Minnesota market.

Sieden began working at Chipotle in 2001 as an at-will employee. During his employment, Sieden rose through the ranks and was eventually promoted to general manager of a newly-built restaurant in Vadnais Heights, Minnesota. On October 12, 2010, Seiden was promoted again, this time to Restaurateur. This title indicated that he was among Chipotle's best general managers and had achieved certain high standards at the Vadnais Heights location. On March 28, 2011, Sieden received another promotion, this time to Restaurateur 2, meaning he was responsible for maintaining the status of his home restaurant (Vadnais Heights) while also mentoring the general manager at a restaurant in Crystal, Minnesota, until that manager reached Restaurateur status. On May 31, 2011, Sieden was promoted to Restaurateur 3, adding a third restaurant, in Blaine, Minnesota, to his responsibilities.

In March 2012, Moe and Patet visited the Crystal location and met with Sieden. Ultimately, they removed the Crystal location from Sieden's responsibilities due to

_____

[2]The Honorable Joan N. Ericksen, United States District Judge for the District of Minnesota.

performance issues. In April 2013, during a managers meeting, Moe told Sieden that he was hiring "too many Hmong people." Sieden defended his employment decisions. Following the meeting, Sieden verbally complained about Moe's comment but did not file a formal complaint with Chipotle. In May 2013, Sieden's responsibilities were further limited to acting manager of one location, North Maplewood, although he retained his title of Restaurateur. On June 18, 2013, Moe and Patet met with Sieden and terminated his employment.

Sieden filed suit in a Minnesota state court asserting claims under the MHRA of (1) reprisal, (2) age discrimination and (3) sexual orientation discrimination. Chipotle removed the case on the basis of diversity jurisdiction and ultimately moved for summary judgment. On September 3, 2015, the district court granted Chipotle's motion as to the reprisal and sexual orientation discrimination claims. The age discrimination claim proceeded to trial, with the jury returning a verdict in favor of Chipotle. Sieden's appeal addresses only the district court's grant of summary judgment on his reprisal claim.

## II.   DISCUSSION
### A.   Standard of Review

"We review de novo a district court's grant of summary judgment, viewing the evidence 'in the light most favorable to the nonmoving party.'" *Barkley, Inc. v. Gabriel Brothers, Inc.*, 829 F.3d 1030, 1038 (8th Cir. 2016) (quoting *Beverly Hills Foodland, Inc. v. United Food & Commercial Workers Union, Local 655*, 39 F.3d 191, 194 (8th Cir. 1994)). "If there is 'no dispute of material fact and reasonable fact finders could not find in favor of the nonmoving party, summary judgment is appropriate.'" *Shrable v. Eaton Corp.*, 695 F.3d 768, 770-71 (8th Cir. 2012) (quoting *Fercello v. Cnty. of Ramsey*, 612 F.3d 1069, 1077 (8th Cir. 2010)). We may affirm a grant of summary judgment on any basis supported by the record. *Noreen v. PharMerica Corp.*, 833 F.3d 988, 992 (8th Cir. 2016) (citing *Johnson v. Securitas Sec. Servs. USA, Inc.*, 769 F.3d 605, 611 (8th Cir. 2014) (en banc)).

**B.    Analysis**

Sieden argues he was discharged in retaliation for his verbal opposition to Moe's comment during the April 2013 meeting, which he claims was protected activity under the MHRA. Chipotle argues that he was discharged due to declining work effort and performance.

Reprisal claims under the MHRA are analyzed using the McDonnell Douglas burden-shifting framework. To survive a motion for summary judgment, Sieden must establish a prima facie case by showing (1) he engaged in statutorily protected activity, (2) he was subjected to an adverse employment action and (3) there was a causal connection between the two. *McLain v. Anderson Corp.*, 567 F.3d 956, 969 (8th Cir. 2009) (citing *Hoover v. Norwest Private Mortgage Banking*, 632 N.W.2d 534, 548 (Minn. 2001)). If he establishes a prima facie case, the burden shifts to Chipotle to articulate a legitimate, non-retaliatory reason for discharge. *Id.* The burden then shifts back to Sieden to show that the proffered reason was pretext for retaliatory conduct. *Id*. (citing *Potter v. Ernst & Young, LLP*, 622 N.W.2d 141, 145 (Minn. Ct. App. 2001), in turn citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 804 (1973)).

We assume, without deciding, that the summary judgment record was sufficient to establish a prima facie case. Chipotle states Sieden was discharged due to performance deficiencies. Performance-related concerns are legitimate non-retaliatory reasons for discharge. *See, e.g.*, *Chambers v. Travelers Cos., Inc.*, 668 F.3d 559, 567 (8th Cir. 2012). Thus, to survive the motion for summary judgment Sieden was required to show that there is a material question of fact as to whether Chipotle's stated reason for discharge is pretextual. As we have noted, this is "typically shown by evidence that the employer's 'explanation is unworthy because it has no basis in fact,' or that 'a prohibited reason more likely motivated' the adverse employment action." *Id. (quoting Torgerson v. City of Rochester*, 643 F.3d 1031, 1047 (8th Cir.) (en banc), *cert. denied*, 132 S. Ct. 513 (2011)). Pretext can also be

demonstrated by showing that the employer shifted its explanation, that the employee received a favorable review shortly before termination or that the employer deviated from policies. *Stallings v. Hussman Corp.*, 447 F.3d 1041, 1052 (8th Cir. 2006) (quoting *Smith v. Allen Health Sys., Inc.*, 302 F.3d 827, 834 (8th Cir. 2002)).

In contending that the summary judgment record supports a finding of pretext, Sieden argues (1) Chipotle's complaints about his performance have no basis in fact, (2) he was set up for failure and received increased scrutiny following the protected activity, (3) the stated reason for discharge shifted during the course of the litigation, (4) Chipotle failed to follow its own disciplinary policies and (5) Chipotle's complaints about his job performance are purely subjective.

Contrary to Sieden's contention that the stated reason for discharge has no basis in fact, the record demonstrates that Chipotle's dissatisfaction with his job performance predated his protected activity. A year before the protected activity, Moe and Patet expressed concerns about Sieden's performance and commitment at the Blaine location. Chipotle then decreased Sieden's responsibilities by removing one restaurant from his oversight.

An operations summary for the period of March 1 through March 28, 2013, illustrated problems at both Blaine and Vadnais Heights. Moe emailed the results to Sieden on March 29, 2013, and asked, "what happened and what's the plan?" Sieden testified that the summary did, in fact, reflect a concern at Vadnais Heights and acknowledged that the results at Blaine were "really bad." In April 2013, a team of Chipotle risk managers conducted an annual Safety, Security & Risk audit at Blaine. On April 17, 2013 (after the protected activity), Patet forwarded the results to Sieden, noting that they revealed some "pretty shocking things." Sieden accepted responsibility, stating, "I have not spent a lot of time with Blaine in the three weeks since I have returned from vacation." Sieden further stated, "I am very sorry for this result and take full responsibility for the lack of validation and follow through. I will

not allow myself or my teams to miss the mark on so many easily sustainable items going forward." The fact that Chipotle expressed concerns about Sieden's performance both before and after the protected activity undercuts the significance of the temporal proximity between that activity and the adverse employment action. *Smith*, 302 F.3d at 834 (citing *Smith v. Ashland, Inc.*, 250 F.3d 1167, 1174 (8th Cir. 2001)).

Nonetheless, Sieden alleges that he received a positive performance review shortly before his protected activity. However, that final performance review reflected serious concerns and, as compared to the previous year, his overall rating dropped one point to the second-lowest rating on Chipotle's four-point scale. Patet wrote that there were "major issues with the dedication" and identified serious problems with the Blaine restaurant that he expected Sieden to address. Patet stated, "We cannot, however, have another few months of Blaine staying the same, retooling the management team, etc." Patet communicated these concerns to Sieden in person, as well.

Sieden also relies on the fact that he had a history of positive performance reviews. *See Erickson v. Farmland Industries, Inc.*, 271 F.3d 718, 728 (8th Cir. 2001) (finding that a history of positive performance reviews can be powerful evidence of satisfactory performance). However, an employer is free to "rely on recent performance reviews more heavily" and doing so does not discount the proffered reason or show pretext. *Id.* at 729 (citing *Dammen v. UniMed Med. Ctr.*, 236 F.3d 978, 982 (8th Cir. 2001)). Regardless of prior performance reviews, the review that occurred immediately prior to the protected activity illustrates that Moe and Patet were concerned about Sieden's job performance. Sieden's allegation that Chipotle's stated reason for discharge has no basis in fact is belied by the evidentiary record.

Sieden next claims he has established pretext because he received increased scrutiny after his protected activity and was reassigned to the North Maplewood restaurant to set him up for failure. Sieden did not present evidence supporting these allegations. Given Chipotle's concerns about Sieden's effort and commitment, which predated the protected activity, the decision to reduce Sieden's responsibilities further and assign him to a different restaurant does not give rise to an inference of pretext. Further, the concerns that arose about Sieden's performance at the North Maplewood restaurant were similar to those that had surfaced earlier. Specifically, Moe expressed concerns about Sieden's scheduling practices and his failure to work sufficient hours at the North Maplewood location.

Sieden also alleges pretext on grounds that Chipotle's reason for discharge has shifted. Again, the record does not support this allegation. Chipotle has always maintained that Sieden's discharge was based on job performance; namely a lack of effort. While Chipotle certainly elaborated on that explanation during the course of this litigation, the nature of the explanation has not changed. A plaintiff claiming shifting explanations to support pretext must show that the reasons are completely different, not minor discrepancies. *See EEOC v. Trans States Airlines, Inc.*, 462 F.3d 987, 995 (8th Cir. 2006) (contrasting a situation with two completely different explanations for the termination were given, which would be evidence of pretext, with a situation where minor discrepancies appeared in a consistent explanation of why the plaintiff was fired); *see also Smith*, 302 F.3d at 835 (finding that an employer's further explanation of the reason for discharge did not prove pretext).

Sieden also argues that Chipotle failed to follow its disciplinary policy, suggesting that Chipotle was required to undertake a progressive discipline procedure with various steps preceding discharge. Once again, he presented no evidence supporting this allegation. Conclusory arguments, without evidence, are insufficient as a matter of law to establish a material question of fact. *Quinn v. St. Louis Cnty.*,

-7-

653 F.3d 745, 752 (8th Cir. 2011). Moreover, it is undisputed that Sieden discharged employees without following a progressive discipline policy.

Finally, Sieden argues that a genuine issue of material fact exists because the stated reasons for his discharge are purely subjective. "We have cautioned against the use of subjective considerations because they are easily fabricated." *Chambers v. Metro. Prop. & Cas. Ins. Co.*, 351 F.3d 848, 858 (8th Cir. 2003) (citing *McCullough v. Real Foods, Inc.*, 140 F.3d 1123, 1129 (8th Cir. 1998)). However, "the presence of subjectivity in employment evaluations is itself not a grounds for challenging those evaluations as discriminatory." *Hilt v. St. Jude Med. S.C., Inc.*, 687 F.3d 375, 381 (8th Cir. 2012) (quoting *Evers v. Alliant Techsystems, Inc.*, 241 F.3d 948, 959 (8th Cir. 2001) (alteration in original) (quotation omitted)). Here, while Chipotle's explanation for discharge is based largely on subjective factors, the record demonstrates that Chipotle's concerns existed long before Sieden's protected activity, indicating that they were not fabricated to conceal a retaliatory animus. Moreover, Chipotle's concerns were not purely subjective. For example, the audit of the Blaine restaurant resulted in objective, negative findings. Sieden did not challenge those findings and accepted responsibility for them.

Sieden has failed to raise a genuine issue of material fact as to whether Chipotle's stated reason for terminating his employment was pretextual. The district court correctly determined that his reprisal claim under the MHRA fails as a matter of law.

## III.   CONCLUSION

The judgment of the district court is affirmed.

_____